UNITED STATES DISTRICT COURT
MIDDLE FOR THE DISTRICT OF FLORIDA
TAMPA DIVISON

)
VINCENT A DUVAL JR,                )
    Plaintiff               )
)Case No.  8: 25 cv 218  MSS – AAS
)
)                                     JAN 27 2025 PM 12:55
v.                                      )                     FILED - USDC - FLMD - TPA
)
EQUIFAX,                              )
    Defendant               )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Vincent Anthon Duval Jr herby sues Defendant and for his Complaint respectfully alleges as follows:

### I. INTRODUCTION

1. This is a civil action by Plaintiff, an individual consumer, seeking actual, statutory, and punitive money damages against Defendant Equifax, Inc. for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter "FCRA")

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue in this District is proper in that the Defendants transact business in Bradenton, Manatee County, Florida and the conduct complained of occurred in Bradenton, Florida.

### III. PARTIES

3. Plaintiff is a natural person residing in Bradenton, Florida.

1



4. Plaintiff is a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a, (b) and (c).

5. Upon information and belief, Defendant Equifax Inc is a Georgia corporation duly authorized and qualified to do business in the State of Florida with its registered agent as follows: The Prentice Hall Corporation System, 1201 HAYS STREET SUITE 105 TALLAHASSEE, FL 32301. (The registered agent for EQUIFAX INC in Florida.)

## IV. FACTS OF THE COMPLAINT

6. In March 2023 Plaintiff obtained a copy of his consumer report and discovered incomplete, inaccurate, false information furnished by Wells Fargo, specifically a tradeline by Wells Fargo Credit Card Services. The last 4 truncated account numbers are 0173. On or about March 30, 2023) Plaintiff sent written disputes to Experian disputing the completeness and accuracy of the account balance, more specifically Plaintiff selected the option that the Identity Theft Report provides as a clarifying disposition for Defendant, Wells Fargo, or any other alleged interested party. The Defendant accepted the account and the balance was verified. The balance of $8,430; is due to an illegal charge of $1,198.68 and overdraft assessed fees by the Furnisher of the Information, more specifically Wells Fargo. After they previously reported there was not a Consumer File pertaining to the Plaintiff.

7. On or about March 30, 2023, the Plaintiff filed an identity theft report and disputed his dispute through the CFPB's portal. Notifying them that the Defendant is reporting a balance resulting from fraudulent transactions. The Plaintiff, personal statement was: I'm writing to delete the aforementioned information in my file. The items I need to be deleted are listed in the report. I am a victim of identity theft and I did not make the charges.

8. The Identity Theft Report allows a clarifying section to select a clarifying option when a consumer disputes the issue being reported.

9. The Plaintiff selected fraudulent accounts or charges appearing on my consumer report per the selected options provided by the People of Authority at the FTC. The Identity Theft Report provides an option to select and clarify options for We the People and American Consumers here in America, specifically Plaintiff. See the

2

section where the options are available on the Identity Theft Report for the Plaintiff when disputing. Regarding Fraudulent Information On Credit Reports. The Option given is indicated: Account or Charges. You will find that Defendant selected: fraudulent accounts or charges appear on my credit report.

10. On or about 5/25/23 Defendant failed to do a reasonable investigation after they responded through the CFPB's Portal. The Defendant stated: in their response. We have received your request to dispute inaccurate information on your Equifax credit file. However, we are unable to locate a credit file for you for one of the following reasons: ● You have not applied for credit recently ● You have not actively used your credit in the last ten years, or ● You have not lived in the United States or have not been issued a United States Social Security number If you have any additional questions, you may call 1-888-EQUIFAX (888-378-4329) or you may visit equifax.com/personal/credit-report-services. See Exhibit attached; Equifax's response through CFPB's response number 230330-10739644.

11. On or about 7/23/23, the Plaintiff requested a consumer report from Equifax through annualcreditreport.com Plaintiff received a consumer report from Equifax through annualcreditreport.com Pursuant to 15 U.S.C. § 1681g(a), upon receipt of the Plaintiff's request Equifax was required to "clearly and accurately" disclose all information in his file at the of his request, only with the limited exception that a consumer social security could be truncated upon their request. The Plaintiff requested an Annual Credit Report through report.com Not selecting for his Social Security Number or any number (hereinafter: SNN) to be truncated. See Exhibit attached; Equifax's Consumer Report Confirmation number 32195336681.

12. On or about 8/7/23 Plaintiff received a truncated Equifax consumer's report with an alleged inaccurate amount of $8,430 verified by the Furnisher. After Defendant had indicated that; On or about 5/23/23; We received your request to dispute inaccurate information on your Equifax credit file. However, we are unable to locate a credit file for you for one of the following reasons: ● You have not applied for credit recently ● You have not actively used your credit in the last ten years, or ● You have not lived in the United States or have not been issued a United States Social Security number If you have any additional questions, you may call 1-888-EQUIFAX (888-378-4329) or you may visit equifax.com/personal/credit-report-services. See Exhibit attached; Equifax's response through CFPB.

13. On or about 7/23/23, the Plaintiff requested a credit report from Equifax through annualcreditreport.com. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request Equifax was required to "clearly and accurately" disclose all information in his file

3

at the of his request, only with the limited exception that a consumer social security could be truncated upon their request. The Plaintiff gave no exception to the truncation of any numbers pertaining to this account not limited to (SNN) social security number

14. Despite Equifax openly admitting on or about 5/26/2023, they could not locate the Plaintiff credit file on the Plaintiff for one of the following reasons. [reasons omitted here. See at paragraph 12 for the reason.]

15. On or about 8/7/23, Plaintiff Upon receiving an annual credit report from Equifax through annualcreditreport.com. The Plaintiff received a truncated Equifax's full file disclosure report confirmation #3219533681, the social security number was truncated. The Plaintiff requested for Full File Disclosure not to be truncated. After per Plaintiff's request names were reported, VINCENT A DUVAL JR AND not Vincent Anthony Duval Jr. Account Information, Account History, and/or Pyament History is incomplete. Date of last Payment wrong The alleged amount of $8,430 was verified by Defendant without providing documentation of underlying documents to support their disposition, more specifically Wells Fargo and Defendant. Wells Fargo has illegally assessed charge(s) and overdraft fee(s) to the allegiant amount according to Wells Fargo's Billing Statements and emails that are materially misleading and thus patently incorrect.

**Equifax's Disclosure Was Not Complete, Clear, or Accurate Balance, and Missing Account Numbers**

16. Despite a requirement to disclose all information in his credit file at the time of his request, on or about 8/7/23 the Plaintiff received a credit report from Equifax. Equifax's disclosure bore two truncated account numbers relating to Wells Fargo Card Services;
- Equifax's Disclosure indicated that the Plaintiff's credit file contained an account bearing the incomplete name of the Plaintiff.
- The Plaintiff's name middle name or initials is A and the following is complete and accurate Vincent Anthony Duval Jr. The Plaintiff's full and complete; legal name is Vincent Anthony Duval Jr, not Vincent A Duval. Father's Name is Vincent A Duval or Vincent Anthony Duval.
- Equifax's Disclosure indicated that the Plaintiff's credit file contained a truncated social security number without consent from the Plaintiff. Plaintiff didn't consent to Defendant truncating anything or permitted truncation for any security reasons. See Exhibit attached; Credit File: 8/7/23: confirmation #3219533681.
- Equifax's Disclosure indicated that the Plaintiff's credit file contained an address that was changed fraudulently and added to his credit file while he was incarcerated. See Exhibits Attached; Wells Fargo's Email. Indicating that the

address was changed. See Exhibit attached Order and Judgement in a criminal case for revocation of supervised release, on pg. 2 for the date of the order and judgment and On Pg. 3 for the actual imprisonment term of 21 months.

- Equifax's Disclosure indicated that the Plaintiff's credit file contained an amount past due of $8,430 that is inaccurate.
- Equifax's Disclosure indicated that the Plaintiff's credit file contained an incomplete Account History.

17. On or about 4/29/24, the Plaintiff requested a credit report from Equifax and Exerain through annualcreditreport.com. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request Experian was required to "clearly and accurately" disclose all information in his file at the of his request, only with the limited exception that the consumer social security could be truncated upon their request. The Defendant denies upon request the referenced to consenting to the limited exception. See the Exhibit attached Equifax's Full File Discourse Request and you will see request of not consenting to limited exception.

18. Defendant never sent a full file disclosure per request of Plaintiff. The Plaintiff never did receive a full file disclosure; pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request Equifax was required to "clearly and accurately" disclose all information in his file at the of his request, only with the limited exception that a consumer social security could be truncated upon their request. The Plaintiff denies upon request the referenced to consenting to the limited exception. See Exhibit attached for the request for all three of the CRAs to disclose a consumer report of all the information in the Defendant's consumer file, not consenting to limited exception too. See Exhibit attached; Equifax, Experian, Equifax Annual Report Request Forms.

19. The Plaintiff noticed that the inaccurate account information was still being reported on his consumer report and has been reported since 8/7/23 See Exhibit attached; Equifax's Consumer Report referenced at paragraph 15.

20. Equifax's Disclosure indicated that Plaintiff's credit file contained an amount past due of $8,430 that is inaccurate even though Defendant stated that they could not locate a file on Defendant. The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. See 15 U.S.C. §1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete

it. 15 U.S.C. §1681i. Also, when a consumer disputes the accuracy of information through the CRAs, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

21. On or about 3/30/23, Plaintiff sent a typed dispute to Equifax disputing the validity of the debt, completeness, errors, and accuracy not limited thereto the aforementioned tradeline.

22. Whereas, Equifax is a credit reporting agency they made matters more confusing for the Plaintiff with the truncated numbers relating to the Wells Fargo Credit Card Services not limited to the truncated account but also the fact that they stated there was no consumer file located pertaining to Plaintiff;

23. After Defendant had indicated that; On or about 5/25/23; We received your request to dispute inaccurate information on your Equifax credit file. However, we are unable to locate a credit file for you for one of the following reasons: • You have not applied for credit recently • You have not actively used your credit in the last ten years, or • You have not lived in the United States or have not been issued a United States Social Security number If you have any additional questions, you may call 1-888-EQUIFAX (888-378-4329) or you may visit equifax.com/personal/credit-report-services. See Exhibit attached; Equifax's response through CFPB's report number 230330-10739644.

24. On or about 5/25/23 Equifax indicated in their response to Plaintiff dispute. We received your request to dispute inaccurate information on your Equifax credit file. However, we are unable to locate a credit file for you. See paragraph 23 for the full scope. However, on or about 8/7/23 pertaining to Plaintiff, Defendant produced a full file disclosure of the said account Plaintiff disputed to Defendant about being fraudulent transaction(s) regarding the alleged amount of $8,430 being verified by the Furnisher, more specifically Wells Fargo without account level documentation or any documentation presently. See Exhibit attached; CFPB report number 230330-10739644. Also, See the Exhibit attached; Credit File: 8/7/23: confirmation #3219533681.

25. When Equifax produces and sells reports regarding Plaintiff to third parties, the full account number and name of the original creditor are included in its reports.

26. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. 1681g(a) as well as the contents of its file regarding the Plaintiff.

27. Having a duty to disclose all of the information regarding the accounts in the plaintiff's file, Equifax breached its duty by failing to provide the complete account numbers, the correct balance owed, the original creditor's name, the plaintiff's legal name, etc. Such information is necessary for a consumer to be able to research and evaluate the information contained in his credit file. Absent such information, a consumer is reduced to, at best playing detective and guessing as to whether the information in their report is accurate.

28. Under the header of Equifax's consumer report. It discloses the Creditor of the account, you will find a truncated account number *0743 indicating that an account exists regarding the Defendant dispute filed with the CFPB, specifically the credit card account. See Exhibit attached CFPB's 230330-10739644. Exhibit is attached Eqauifax'x consumer report regarding the referenced dispute; attached is the Identity Theft Report.

29. On information and belief, Wells Fargo Card Service reported the full account number to Equifax, and this information was contained within the Equifax file regarding the Plaintiff at the time of his request.

30. Due to widespread systemic problems, Equifax's automated system truncates account numbers, from revolving accounts reported by data furnishers that have a reported current payment status of "charge off" in addition to many other types of accounts.

31. Equifax knows of this error but despite such knowledge, they haven't corrected it...

32. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. See Washington v. Equifax, Case No. 3: 19-cv-00154 (M.D. Tenn. Jun 12, 2019).

33. The lack of full account numbers caused Mr. Duval great frustration and emotional distress when trying to understand his credit report and verify it against his records and costemplated suicide twice. Because of the ongoing disputing between Defendant, Wells Fargo, and Wells Fargo's fraudulent actions. Your Honor the Plaintiff is merely a layman trying to take control of his financial life.

34. Furthermore, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000). " it is our view that a CRA that always scrambles or truncates  account (or social security numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosures of 'all information' in the file."

35. Furthermore the balance the Defendant is reporting is the residue of what Wells Fargo has been warned, sued, and fined,  by the CFPB. They made a public statement. About the ongoing illegal charges and assessed fees, closing of accounts, and contradicting emailed emails that are a part of Wells Fargo's ongoing deceptive, unfair, and abusive practice and commerce to Plaintiff. See Exhibit attached; Consent Order and Stipulation Issuance

36. Equifax's truncating the social security and account numbers greatly decreases a consumer's ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his records.

### IV. Prevalence of Equifax's Account Numbers Errors

37. On information and belief, Equifax's Disclosure to the Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

38. On information and belief, the same template is used virtually every time a consumer requests their file from Equifax www.annuallcreditreport.com.

39. Thus, every time a consumer with accounts appears as a "chargeoff" in addition to many other types of accounts the account(s) when they request a credit report from Equifax through www.annualcreditreport.com provides truncated account numbers. Since the template's use began, consumers received disclosures with the same errors as the Plaintiff. Equifax, through litigation, has known of these flaws in its systems for years but has done nothing to fix them, despite the large number of

8

consumers affected. See, e.g., Justin Purdy vs Equifax Information Services LLC, case 8:19-cv-00217, M.D. Fl, 1/29/1980

40. Despite ample notice and time to correct their errors, Equifax continues to provide, false, and incomplete information in its disclosures to consumers

41. Equifax's knowing and repeated conduct warrants an award of punitive damages.

42. Equifax's failure to disclose all of the information in the consumer's credit file in the free annual disclosure is an intentional violation of 15 U.S.C. 1681g(a), motivated by Defendant's desire to avoid costs and increase profits.

43. The Plaintiff has the right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately.  See 15 U.S.C. 1681j

44. (1) Equifax's failure to accurately and fully disclose the information within its file, (2) when Defendant stated they were unable to locate a consumer file on Plaintiff, then disclosing the same disputed information after Plaintiff disputed the same said information, which the Defendant indicated there was no file on Plaintiff (3) and failing to investigate Plaintiff's dispute. Thus, Defendant regarding Plaintiff deprived him of this right.

### V.  Equifax Conspiring along with Wells Fargo and Naderpour & Associates, P. A. Violates the Federal  Rico Act

45. On or about 2/16/22  Plaintiff made a Payment of $1,198.68 to Wells Fargo. Reference number F558300DZ00CGHGDDA. Description: automatic payment. See the Exhibit attached of Wells Fargo's Account Number Ending in 1066; Billing Statement Ending 1/22/22 to 2/18/22 and a supplemental affidavit stating that Plaintiff made the payment on or about 2/16/22.

46. However, There was no payment due until the next Billing Statement period on or about 3/16/22. Being that it was an amount of $5,037.36: the payment in dispute. Thus not a payment is required. Thus the amount of $1,198.68 shall be tendered back to the Defendant's checking account and not charged against the Defendant and credited to the Plaintiff.

9

1. On or about 2/17/22 to 2/19/22, Wells Fargo fraudulently manufactured and changed the reference number from F558300DZ00CGHGDDA and alleged automatic payment and credits.

2. To a new manufactured reference number F558300EF000RC063, Description to returned payment from alleged automatic payment.

3. The Plaintiff personally made a manual payment. The contracted automatic payment per our Platinum Credit Card terms and conditions is $25), Credited to Plaintiff. Plaintiff credited the exact amount of $1,198.68, more specifically Plaintiff tendered $1,198.68 payment manually, (not automatically) for consideration per Plaintiff's and Defendant's terms and conditions.

4. The Plaintiff personally tendered his consideration on 2/16/22. No one else was there to witness the tender. Who may have first knowledge, otherwise speak or forever hold your peace in the interest of my pursuit for justice about my interest. Speak now or hold your peace. See Exhibit attached; Wells Fargo Account Number Ending in 1066, Statement Billing Period 1/22/22 to 2/18/22 for evidence referenced.

5. Wells Fargo has illegally assessed, thus ultimately increasing the balance transferred by adding the amount of $1,198.68 to the overall balance.

6. Then on or about 2/17/22, Wells Fargo sent an email to Plainitff's email. The email notice from Wells Fargo indicated an insufficient notice of $1,198.68 and an overdraft fee of $35. Stating the following;

7. On or about 2/16/22 your available balance for your Wells Fargo account Vincent's checking was insufficient to cover the following transactions Description: WF Credit Card Auto Pay 22021690154573551066 (another fraudulent manufactured reference number) in the of Amount $1,198.68, Action: Returned Fee $35.00, Total Fee: $35 See Exhibit attached; email from the Wells Fargo of the $35 Overdraft Fee.

8. Wells Fargo unlawfully and illegally deemed the referenced funds: insufficient and indicated the payment was automatic. Plaintiff strategically deposited sufficient amounts during the tenure of the

credit card account, more specifically the Wells Fargo's and Plaintiff's Contractual Agreement to render payment to Wells Fargo.

9. On or about 2/28/22, Wells Fargo sent another email. Indicating another Fraudulent insufficient notice, stating the following: on 2/25/22 your available balance for your Wells Fargo account Vincent's checking was insufficient to cover the following transactions. See Exhibit attached; Wells Fargo's Emails.

10. Transactions Description: WF Credit Card: RETRY PYMT 220169054573551066, Amount $1,198.68 Action Returned.

11. The Plaintiff asserts that there was no payment due until 3/16/22. See Wells Fargo Account Number Ending in 1066, Statement Billing Period 1/22 to 2/18/22. See Exhibit attached; said Exhibit; Billing statement aforementioned at 33

12. (1) Wells Fargo illegally tried a retry payment knowing that there was an N0 payment that was due. (2) Wells Fargo had already illegally assessed the said amount to the overall balance on or about 2/16/22 to 2/19/22. See Exhibit attached; Wells Fargo Account Number Ending in 9195, Statement billing Period 2/19/22 to 3/22/22.

13. The Plaintiff would like to point out that Wells Fargo has a lot of compliance issues regarding the FCRA and CFPB's stipulation and consent to the issuance of a consent order and consent order, very under-educated and trained (TMs) team members from the Top to the Bottom or they're all criminals in regards to this subject matter. They can't seem to determine a manual payment vs automatic payment and can't seem to comprehend or don't care to determine that no payment is due; which means no payment is DUE, the underlying documents are to accompany the Furnisher and the CRA's when responding to Consumers disputes but neither provided documents along with their response, indicating the Plaintiff dispute is verified. Wells Fago seems not to recall stating the amount of $1,198.68 was insufficient before adding it to the overall amount of the account-stated claim case in small claims court in Manatee County, previously mentioned. Wells Fargo seems not to hold TMs accountable. That would be great internal customer service towards their fellow TMs. That would

encourage Wells Fargo to become compliant and thus Wells Fargo will refrain from illegally reversing or changing credits paid to them ultimately charging against Plaintiff but not crediting the amount paid to them, not being complaint regarding FRCA, and CFPB's lawsuit against Wells Fargo. There was no payment due. Thus Defendant injured Plaintiff. When Defendant's consideration was a statement indicating there was no Credit File on the Plaintiff reported. Defendant continues to conspire with Wells Fargo by continuing to report an inaccurate balance of 8,430 by including an amount of 1, 198.68 to the overall balance. That never existed according to Wells Fargo's emails. Wells Fargo has committed unjust enrichment through illegally assessed said funds, using emails, wires, and billing statements. Emails and wire fraud are criminal acts that violate the Federal Rico Act.

14. The emailed emails are wired fraud, money wire fraud, and billing statements are materially misleading and patently incorrect thus making the account-stated claim in the amount of 8,430.61: unverifiable.

15. The Plaintiff asserts the money should've been returned on or about 2/16/22 to 2/19/22 to his checking account.

16. Not debited to the Plaintiff and credited to Wells Fargo. The charge added in favor of Wells Fargo is unjust enrichment and a sure money grab is criminal.

17. Then Wells Fargo indicated the money was insufficient on or about 2/17/22 with an overdraft fee. Then emailed another email; on or about 2/28/22 without an overdraft fee. Wells Fargo is trying to cover up the finger and footprints of unlawfully and illegally manufactured emails, transactions; wire fraud, and inaccurate, incomplete, or errors in billing statements and added an illegally assessed charge of $1,198.68 and unfairly closing the Plaintiff's checking accounts is unfair.

18. When looking over Wells Fargo Accounts and Billing statements from Wells Fargo. The billing statements do not indicate an insufficient fund notice of $1,198.68 with an overdraft fee of $35 or another email indication of the same amount without an overdraft fee.

19. When looking over the Plaintiff's Emailed Emails, and Billing Statements your Honor. You find similar acts that the plaintiff was warned, sued, and fined about by the CFPB. You will not find an insufficient fund notice of that same amount in any of the billing statements that correlate with the Wells Fargo emails. But you will find again that said amount has been added as credited to Wells Fargo but illegally assessed and despite all that Equifax is still reporting the account and the balance being that information still exists in my Credit File but responded to the Plaintiff's initial dispute. Stating that there were no consumer files on the Plaintiff.

20. The Plaintiff is confused about how Wells Fargo gets to misapply the amount of $1,198.68 to Plaintiff. When Wells Fargo's emails indicated the funds were insufficient. How do you get something out of nothing? Wells Fargo's emails stated the funds were insufficient but credited the same amount to themselves is a criminal act and violated the Rico Act. Wells Fargo and Defendant's actions are misleading, deceptive, unfair, and abusive practice(s) in commerce.

21. However, you will not find in Wells Fargo's billing statement the said amount being deemed by Wells Fargo as insufficient. See the aforementioned Exhibits attached for the Plaintiff's Billing Statement vs the Email of the insufficient notice.

22. Wells Fargo's illegally charged and assessed fees are Unfair, Deceptive, and Abusive and were alarming, upsetting, very concerning, misleading, and confusing, and shocked my conscience, unfairly, and it unconscionable to find out that Wells Fargo seems to have taken the money. The Plaintiff tendered for consideration of paying down the bill and Wells Fargo deemed $1,198.68 insufficient as if the money was not ever in the Plaintif's account. Plaintiff has contemplated committing suicide many times because of Wells Fargo and Defendant's actions while trying to resolve this matter with them. The Plaintiff is tired. The Plaintiff is very frustrated and is emotionally reckoned, from being embarrassed, humiliated, and being called a liar and not taken seriously and dealing with these criminals about this clear-as-day issue.

23. The acts of Wells Fargo and Defendant. They act as if they're not looking to hold themselves accountable as agreed by the Wells Fargo

13

Ceo and required by the FCRA. Defendant and Wells Fargo have some of the worst customer service Plaintiff has ever experienced. They're Kings of Poor World Class Customer and Consumer Service.

24. The Plaintiff noticed that on the Wells Fargo account Number 9195, the statement billing period was 2/19/22 to 3/22/22. That is where you will find Wells Fargo has illegally added the returned amount of 1,198.68 to the overall balance. See Exhibit attached; Wells Fargo Account Number Ending in 9195, Statement Billing Period. 2/19/22 to 3/22/22.

25. The Billing Statement is materially misleading and patently incorrect due to emailed emails, and billing statements indicate wire fraud. There was no payment due.

26. The amount referenced added to the balance of the account stated claim makes the Defendant's disposition baseless. The Plaintiff asks the Court for immediate assistance because Defendant and Wells Fargo are conspiring together by continuing to report the illegally assessed amounts to the accelerated amount/account stated claim of $8430.60 Wells Fargo did not just violate the FCRA. When Wells Fargo committed the acts mentioned. When Wells Fargo added that the amount of $1,198.68, the total balance of $8430.60, Wells Fargo also violated the Federal Rica Act by Falsely reporting an inaccurate balance and using Small Claims Court under the color of law and the Defendant to continue to disseminate inaccurate and incomplete Equifax's consumer reports through the Us Postal Service and Mail.

27. The Plaintiff goggled Wells Fargo's insufficient fund notice, overdraft fees closing checking accounts, and illegally added charges. The Defendant found the following articles.

28. Warning Wells Fargo, The CFPB warned Wells Fargo, sued, fined, and made their CEO sign the Stipulation and Consent to the Issuance of a Consent Order. See Exhibit attached; CFPB Consent Orders Wells Fargo to Pay $3.7 Billion for Widespread Mismanagement of Auto Loans, Mortgages, and Deposit Accounts.

29. In the Stipulations and Consent to the Issuance of a Consent Order, signed, specifically by the CEO of Wells Fargo, Et. al. See Exhibit attached; Stipulations and Consent to the Issuance of a Consent Order;

30. The Consumer Financial Protection Bureau (Bureau) intends to initiate an administrative proceeding against Wells Fargo Bank, N.A. under 12 U.S.C. §§ 5563 and 5565, for its unfairly misapplying customer payments, unfairly charging erroneous fees and other charges, repossessing customer vehicles, unfairly failing to refund certain unearned fees on debt cancellation products, denying mortgage modifications to qualified borrowers, freezing customer deposit accounts, deceptively failing to waive certain deposit account service fees, and unfairly charging certain overdraft fees on deposit accounts in violation of the CFPA's prohibition on unfair and deceptive acts or practices, 12 U.S.C. §§ 5531, 5536. See Exhibit Attached; Consent Order.

31. The Consent went on the state: The Respondent, (Wells Fargo) in the interest of compliance and resolution of the matter, and without admitting or denying any wrongdoing, consents to the issuance of a Consent Order substantially in the form of the one attached to this Stipulation and Consent to the Issuance of a Consent Order (Consent Order), and which is incorporated by Reference. In consideration of the above premises, Respondent agrees to the following:

### Jurisdiction

1. The Bureau has jurisdiction over this matter under §§ 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565.

### Consent

2. Respondent agrees to the issuance of the Consent Order, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

3. Respondent agrees that the Consent Order will be deemed an "order issued with the consent of the person concerned" under 12 U.S.C. § 5563(b)(4) and agrees that the Consent Order will become a final order, effective upon its entry on the administrative docket, and will be fully enforceable by the Bureau under 12 U.S.C. §§ 5563(d)(1) and 5565.

4. Respondent voluntarily enters into this Stipulation and Consent to the Issuance of a Consent Order (Stipulation).

5. The Consent Order resolves only Respondent's potential liability for law violations that the Bureau asserted or might have asserted based on the practices described in Section IV of the Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. Respondent acknowledges that no promise or representation has been made by the Bureau or any employee, agent, or representative of the Bureau, about any liability outside of this action that may have arisen or may arise from the facts underlying this action or immunity from any such liability provided that nothing in this paragraph 5 shall affect the validity of supervisory communications between the Bureau and Respondent.

6. Respondent agrees that the facts described in Section IV of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its rights to any payment or monetary judgment under the Consent Order.

7. The terms and provisions of this Stipulation and the Consent Order will be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

Waivers

The Respondent, by consenting to this Stipulation, waives:

a. Any right to service of the Consent Order, and agrees that entry of the; Consent Order on the administrative docket will constitute notice to Respondent of its terms and conditions;

b. Any objection to the jurisdiction of the Bureau, including, without limitation, under section 1053 of the CFPA, 12 U.S.C. § 5563;

c. The rights to all hearings under the statutory provisions under which the proceeding is to be or has been instituted; the filing of proposed findings of fact and conclusions of law; proceedings before, and a recommended decision by, a hearing officer; all post-hearing procedures; and any other procedural right available under section 1053 of the CFPA, 12 U.S.C. § 5563, or 12 C.F.R. Part 1081;

d. The right to seek any administrative or judicial review of the Consent Order;

e. Any claim for fees, costs, or expenses against the Bureau, any of its agents or employees, and any other governmental entity, related to any way to this enforcement matter or the Consent Order, whether arising under common law or the terms of any statute, including, but not limited to the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996; for these purposes, 2022-CFPB-0011 Document 2 Filed 12/20/2022 Page 4 of 5 Respondent agrees that Respondent is not the prevailing party in this action because the parties have reached a good-faith settlement;

f. Any other right to challenge or contest the validity of the Consent Order;

g. Such provisions of the Bureau's rules or other requirements of law as may be construed to prevent any Bureau employee from participating in the preparation of, or advising the Director as to, any order, opinion, finding of fact, or conclusion of law to be entered in connection with this Stipulation or the Consent Order; and

h. Any right to claim bias or prejudgment by the Director based on the consideration of or discussions concerning the settlement of all or any part of the proceeding.

WELLS FARGO BANK, N.A. BY:

Date 12/19/2022
Charles W. Scharf
CEO and President, Wells Fargo Bank, N.A.
See Exhibit attached; link to the article, stipulation, and consent to the
issuance of a consent order and order: <u>wells-fargo-bank-na-2022</u>

## CONSENT ORDER

47. The Consumer Financial Protection Bureau (Bureau) has identified the
following law violations at Wells Fargo Bank, N. A  (iii) with respect to
consumer deposit accounts, Respondent improperly froze or closed customer
accounts, and improperly charged certain overdraft fees.

48.  Since 2020, Respondent has accelerated corrective actions and
remediation, including addressing these violations. Under §§ 1053 and 1055 of
the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563,
5565, the Bureau issues this Consent Order. Stipulation.

49. Respondent has executed a "Stipulation and Consent to the Issuance of a
Consent Order," dated December 19, 2022, (Stipulation), which is
incorporated by reference and is accepted by the Bureau. By this Stipulation,
Respondent has consented to the issuance of this Consent Order by the
Bureau under §§ 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565,
without admitting or denying any of the findings of fact or conclusions of law,
except that Respondent admits the facts necessary to establish the Bureau's
jurisdiction over Respondent and the subject matter of this action. See
Exhibit attached link to; Consent Order <u>Wells Fargo Bank, N.A. | Consumer
Financial Protection Bureau</u>

50. On or about 7/2/24 Plaintiff sent a dispute to Defendant. Disputing Wells
Fargo Credit Card Account. The Following dispute: I'm writing you to
dispute the Wells Fargo Credit Card services balance of 8,430. As previously
mentioned and disputed. They are pertaining to the FTC Identity Theft
Report.  Yes, fraudulent accounts or charges appear on my credit report.

Can you all ensure that everything is complete, accurate, and accurate on my
credit report? In other words, make sure that my consumer report has
maximum accuracy.

Also, you all never sent me the result of the disputes that you all stated that you were going to forward to the furnisher with all the documents. Account: 446542XXXX. The letter went on to say:

### DISCLAIMER CLAUSE

This dispute is not an error, I did not make the transactions/charges or receive the goods or services from the transactions/charges. This dispute is not made by a third party, credit repair company, or person, nor an individual. Furthermore, I Vincent Anthony Duval Jr am personally making this dispute to the best of my knowledge.

Best regards,
Vincent Anthony Duval Jr

P.S. See an attached State ID and Social Security Card on the page.

51. On or about 8/20/24 Plaintiff sent a dispute to Defendant. Disputing Wells Fargo Card Account. The same dispute word for word that the Plaintiff disputed on or about 7/2/24. See Exhibits attached; US Postal Service Certified Mail Receipts 7/2/24 and /8/20/24

52. On or about 7/9/24 Defendant responded with a form letter. The following letter stated: Dear VINCENT A DUVAL: Thank you for contacting Equifax indicating fraudulent items on your credit report.

We are here to assist you. PLEASE BE ADVISED THAT TO PROCESS YOUR REQUEST. EQUIFAX NEEDS TO RECEIVE VALID AND LEGIBLE DOCUMENTATION. THE IDENTIFICATION DOCUMENTS SENT ARE ILLEGIBLE. PLEASE SUBMIT A LEGIBLE COPY OF YOUR SOCIAL SECURITY CARD. PAY STUB W2 FORM OR 1099 FORM AS PROOF OF SOCIAL SECURITY NUMBER. ALSO, PLEASE SUBMIT A LEGIBLE COPY OF YOUR DRIVER'S LICENSE, STATE-ISSUED IDENTIFICATION CARD, UTILITY BILL, PAY STUB, W2 FORM, 1099 FORM, RENTAL OR LEASE AGREEMENT/HOUSE DEED, MORTGAGE STATEMENT OR BANK STATEMENT WITH THE CORRECT ADDRESS AS PROOF OF YOUR CURRENT ADDRESS

Because the information you provided as proof of your identity does not match the information we currently have on your credit file. We ask that you send us a copy of two different items - one from each of the two categories listed below. Often item will verify your identity and the other will verify your current address.

53. On or about 7/2/24,  Plaintiff previously provided two substantial required forms of the legible idea, and, matching information. The Plaintiff attached a Florida State Idea and Social Security Card. Thus Defendant failed to do a reasonable investigation within 30 days and deleted the account and since producing an incomplete and inaccurate consumer report on or about 8/7/23 due to inaccurate information being in Plaintiff's consumer file by Defendant. See Exhibit attached; Plaintiff's dispute letter of 7/2/24

54. On or about 8/31/24, Defendant responded to the Plaintiff dispute, that was sent by Plaintiff on or about 8/20/24, The following is Defendant's response:

Dear Vincent A. Duval,

We have received your request concerning the blocking of certain information on your Equifax credit file.

Please be advised that Equifax, at this time, is not blocking the information you named in your request, pursuant to Section 605B(C) of the Fair Credit Report Act. We are, however, contacting each company that provided the disputed information on your behalf. We will also forward a copy of the documents you have provided to each creditor for their review. You should receive the results of this investigation, which may result in the removal of the dispute information, within 30 days.

For Equifax to block information under Section 605B of the Fair Credit Reporting Act, you need to provide proof of your identity, the specific information that is the result of identity theft, and a copy of your complete and submitted Identity Theft with the Federal Trade Commission (available at identitytheft.gov) or police report regarding the identity theft.

Thank you for the opportunity to assist you. Equifax Information Services, LLC

55. Whereas, Equifax has failed to do a reasonable investigation within 30 days and since 8/7/23, they're still reporting an inaccurate balance, inaccurate or incomplete Account History, truncated social security numbers and account numbers, etc inaccurate and incomplete information on their consumer File; due to inaccurate information provided by Wells Fargo in Plaintiff's consumer file by Defendant, more specifically the account balance

$8,430 not limited to. See Exhibit attached; Equifax Creid file disclosure 8/7/23 confirmation #3219533681. Defendant is still disseminating consumer reports pertaining to Plaintiff's intellectual property; my name. To drive revenue and to seek profits by providing Wells Fargo with Defendant's consumer reports or commercial information that is inaccurate or incomplete pertaining to Plaintiff in violation of the Rico Act 18 U.S.C. §§ 1341, 1343 conspiring with Wells Fargo by reporting and mailing their consumer report with when conspiring with Wells Fargo illegally charging fees, assessed overdraft fees, and published inaccurate and incomplete consumer reports and Full File Disclosure. Equifax is currently a part of Wells Fargo and Naderpour & Associates's law firm trying to extort the Plaintiff; by trying to assist, helping by any means, or collect on profits when issuing Credit File or Consumer Reports. Being falsely reported gives Wells Fargo an alleged valid reason to sue the Plaintiff for an account stated claim in the county court of the 12th Judicial Circuit in and for Manatee County, Florida, Case No. 2024CC002324AX. Using said Court and the Manatee County Sheriff as Civil War Power making a false claim contradicting, the signed CFPB's Consent Order by Wells Fargo's CEO. They are involved in an ongoing scheme to defraud Plaintiff and make a mockery of the Court. Wells Fargo devised a scheme to defraud, obtain money or property, and unlawfully transfer the money using false or fraudulent pretenses and representations under the guise of being the injured party. The Plaintiff is the real injured party being that they used the US mail services and interstate wires to try to collect an alleged debt and then profit sharing from their well-oiled oil organized shack down collection scam. See Exhibit attached; Plaintiff's dispute letter of 8/20/24. Defendants knowingly devised or knowingly participated in a scheme or artifice to defraud the Plaintiffs or to help obtain money or property of Plaintiffs using false or fraudulent pretenses, representations, or promises. The scheme includes but is not limited to illegally charging $1,198.68 which Wells Fargo stated was insufficient, and that amount should have been credited back to Plainitff's checking account, two contradicting emails. One email states $1,198.68 is insufficient and an assessed fee of $35 and the second email states $1,198.68 is insufficient without an assessed fee of $35, Making false reports to credit reporting agencies and filing false and fraudulent lawsuits against the Plaintiffs under the false pretense of a valid debt owed to Wells Fargo. The defendant could foresee that the U.S. Postal Service and interstate wires would be "used for the purpose of" advancing, furthering,

executing, concealing, conducting, participating in, or carrying out the scheme, within the meaning of 18 USC §§1341 and 1343. Defendants could foresee that the US Postal Service and interstate wires would be used in every dunning letter, telephone call, credit report court judgment and enforcement; and each use of the mail and wires has furthered the fraudulent scheme and enables Wells Fargo and Naderpour and Assicoate Law Firm take money and property from Plaintiffs and putative.

In particular, Defendants knew or could foresee that the US Postal Service and interstate wires would be used to receive and/or deliver, among other things, communications between Defendant to collect the fraudulent amount of $8,430. Wells Fargo added the illegally assessed fee of $1,198.68 which was included in the account-stated claim amount of $8,430. Wells Fargo mailed dunning letters to Plaintiffs; telephone calls to Plaintiffs' home, cell, and work numbers; furnished reports about Plaintiffs to credit reporting agencies; and filed lawsuits against Plaintiffs in furtherance of the fraudulent scheme.

Defendant has specific knowledge that the mail and wires are being utilized to further the overall purpose of executing the scheme to defraud, and/or it was reasonably foreseeable that the mail and wires would be used. Without the use of the mail and wires, Defendants could not have made contact with Plaintiff Consumer nor tried to receive money from Plaintiff Consumers.

As a result of the actions and inactions of Defendant, Plaintiff suffered damages, including but not limited to, his FICO score being lowered resulting in him being denied credit or being granted credit with a much higher interest rate, severe humiliation, emotional distress, and mental anguish.

## I. FIRST CLAIM FOR RELIEF 15 U.S.C. § 1681g(a)(1)
### Defendants Equifax, Inc

56. Plaintiff re-alleges and incorporates by reference paragraphs 1- 5 above.

57. Defendant has violated 15 U.S.C. 1681g(a)(1) when responding to Plaintiff's request for his consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a consumer, all of the information in his file at the time of the request, more specifically Defendants disclosed an account reported by Wells Fargo Credit Card Services without disclosing the full

account, or social security numbers, of the Plaintiff, an inaccurate amount of debt owed, and even though full account numbers were reported by the data furnisher(s).

58. Defendants knowingly provided inaccurate information in Plaintiff's disclosure, as it knew these issues, which have been identified and disputed by other consumers for years.

59. Defendant's failure was a willful failure to fulfill its duty to clearly and accurately disclose to Plaintiff all of the information in his consumer file at the time of request and thus, Plaintiff is entitled to the greater of his actual damages and statutory damages pursuant to 15 U.S.C. 1681n.

## II. SECOND CLAIM FOR RELIEF 15 U.S.C. § 1681e(b)
### (Defendant Equifax, Inc.)

60. Plaintiff re-alleges and incorporates by reference paragraphs 1- 59 above.

61. Defendant Equifax, Inc. violated 15 U.S.C. § 168le(b) because they failed to follow reasonable procedures to assure the maximum possible accuracy of the trade line.

62. Defendant Equifax, Inc. has caused injury in fact to Plaintiff by causing mental and emotional distress, damage to credit rating, and other damages to Plaintiff.

63. At all times alleged herein, Defendant Equifax, Inc. acted negligently and/or willfully.

64. Defendant Equifax, Inc. is liable to Plaintiff for actual damages, punitive damages, and costs pursuant to 15 U.S.C.§1681n and actual damages and costs

## III. THIRD CLAIM FOR RELIEF 15 U.S.C. §1681i(a)(2)
### (Defendant Equifax, Inc)

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 64 above

66. Defendant Equifax, Inc. has failed to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

23

67. Defendant Equifax, Inc. has violated 15 U.S.C. § 1681i(a)(2) in that they failed to consider and forward all relevant information to the CRA's (credit reporting agencies).

68. Defendant Equifax, Inc. has caused injury in fact, by causing, among other effects, mental and emotional distress, damage to credit reputation, and resulting in credit damages to Plaintiff.

69. Defendant Equifax, Inc. has done so either negligently or willfully.

70. Plaintiff is entitled to actual damages, punitive damages, and costs pursuant to 15 U.S.C. § 16810.

71. Alternatively, Plaintiff is entitled to actual damages and costs if the violation is negligent, pursuant to 15 U.S.C. §1681n.

## IV. FOURTH CLAIM FOR RELIEF  15 U.S.C. §1681i(a)(4)
### (Defendant Equifax, Inc.)

72. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 71 above.

73. Defendant Equifax, Inc. has violated 15 U.S.C. §1681i(a)(4) iii that they failed to delete information that was inaccurate or could not be verified.

74. Defendant Equifax, Inc. has caused injury in fact to Plaintiff by causing, among other effects, mental and emotional distress, damage to credit reputation, and resulting in credit damages to Plaintiff.

75. At all times alleged herein, Defendant Equifax, Inc. acted negligently and willfully.

76. Defendant Equifax, Inc. Is liable to Plaintiff for actual damages, punitive damages, and costs pursuant to 15 U.S.C. §1681n and actual damages and costs pursuant to 15 U.S.C. §16810.

## V. FIFTH CLAIM FOR RELIEF 15 U.S.C. §1681i(a)(6)(B)(iii)
### (Defendant Equifax, Inc.)

77. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 76 above.

78. Defendant Exuifax, Inc. has caused injury in fact to Plaintiff by causing mental and emotional distress, damage to credit rating, and resulting in credit damage to Plaintiff.

79. At all times alleged herein, Defendant Equifax, Inc. acted negligently and willfully.

80. Defendant Equifax, Inc. is liable to Plaintiff for actual damages, punitive damages, and costs pursuant to 15 U.S.C. §1681n and actual damages and costs pursuant to 15 U.S.C. §16810.

## VI. JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a jury trial and entry of judgment in favor of Plaintiff and against all Defendants for:

A. Actual or statutory damages pursuant to 15 U.S.C. § 1681n(a)(l)(A).
B. Actual damages pursuant to 15 U.S.C. § 168lo(a)(l);
C. For such other and further relief as the Court may deem just and proper.

To          Respectfully submitted

Respectfully submitted,

By Vincent Anthony Duval Jr

Vincent Anthony Duval Jr.
916 8th Street East
Bradenton, Florida 34208

vincentanthonyduvaljr@gmail.com

Dated: 1/21/, 2025 Respectfully Submitted,

Vincent Anthony Duval Jr, pro se
916 8th Street East
Bradenton, Fl 34208

## JURAT

I _Vincent Duval_ , Vincent Anthony Duval Jr. Declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed on _1/21/_ , 2025

By: _____
Vincent Anthony Duval Jr.

## STATE OF FLORIDA

## COUNTY OF MANATEE COUNTY

Declared before me, by _Vincent Anthony Duval Jr_ I have hereunto set my

hand and seal of office this, _21 st_ Day of _January_ , 2025

_____
Notary

SHATIVA WILLIAMS-LYONS
MY COMMISSION # HH 338638
EXPIRES: December 6, 2026

(Seal)

26

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of the foregoing document was served, by or through U.S. Postal Mail Services, mailed to the named individuals on the Service List below of 1/21/2025

Vincent Anthony Duval Jr

**Service List;**
